*772 ATTORNEY DISCIPLINARY PROCEEDINGS
JjPER CURIAM.*
This disciplinary matter arises from six counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Barry G. Feazel. This court previously suspended respondent from the practice of law for a period of one year and one day. In re Feazel, 98-2060 (La.10/9/98), 718 So.2d 969 (“Feazel I”).[1] Although more than two years have passed since respondent was eligible to apply for reinstatement from the suspension imposed in Feazel I, he has not sought reinstatement and therefore remains suspended.
UNDERLYING FACTS

The Randolph Matter

In October 1997, Phillip Randolph paid $1,300 to respondent to handle his divorce. Respondent represented to his client that he had filed the divorce, but in fact, re *773 spondent did little or nothing on Mr. Randolph’s behalf and failed to communicate with him. Eventually, Mr. Randolph’s former wife filed for divorce. In addition, Mr. Randolph asked respondent to handle the collection of an NSF check. Respondent failed to pursue the collection matter and failed to return the original NSF check to his client.
|20n October 23, 1998, respondent’s suspension in Feazel I became final. Respondent failed to inform Mr. Randolph of the suspension, failed to return his client’s file, and failed to account for or return the unearned portion of the fee Mr. Randolph paid.
Mr. Randolph filed a complaint with the ODC concerning respondent’s conduct. Respondent failed to cooperate with the ODC in the investigation of the complaint. In particular, respondent failed to comply with the ODC’s requests for supplemental information.

The Saucedo Matter

On October 26, 1998, three days after respondent’s suspension in Feazel I become final, respondent accepted $900 from Kimberly Saucedo to handle an immigration matter for Mrs. Saucedo and her husband. Respondent represented to his clients that he was pursuing the matter, but in fact, respondent did little or nothing on his clients’ behalf and failed to communicate with them. Respondent failed to inform his clients of his suspension and failed to account for or return the unearned portion of the fee he was paid.
Mrs. Saucedo filed a complaint with the ODC concerning respondent’s conduct. Respondent failed to cooperate with the ODC in the investigation of the complaint. In particular, respondent failed to comply with the ODC’s requests for supplemental information.

The Samuels Matter

In May 1998, Barbara Samuels paid respondent $900 to handle a community property settlement. Respondent did little or nothing on Ms. Samuels’ behalf and failed to communicate with her. Later, respondent failed to inform Ms. Samuels that | she was suspended from the practice of law. He also failed to return his client’s file and failed to account for or return the unearned portion of the fee he was paid.
Ms. Samuels filed a complaint with the ODC concerning respondent’s conduct. Respondent failed to cooperate with the ODC in the investigation of the complaint. In particular, respondent failed to comply with the ODC’s requests for supplemental information.
DISCIPLINARY PROCEEDINGS
Following an investigation, the ODC filed six counts of formal charges against respondent, three of which alleged substantive misconduct in the Randolph, Sau-cedo, and Samuels matters and three of which alleged respondent failed to cooperate with the ODC in its investigation of this misconduct. The ODC alleged violations of Rules 1.1 (lack of competence), 1.3 (lack of diligence), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.16(d) (termination of the representation), 8.1 (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct, and of Supreme Court Rule XIX, § 26 (notice to clients, adverse parties, and *774 counsel following the imposition of discipline). In addition, the ODC alleged that respondent engaged in the unauthorized practice of law in the Saucedo matter, a violation of Rule 5.5 of the Rules of Professional Conduct.
Respondent filed an answer to the formal charges. He denied any misconduct relating to the Randolph representation. With respect to the Saucedo matter, | ¿respondent stated that he may have been retained after his suspension was effective, but before he received notice of the court’s action. He contended that he prepared the Saucedos’ pleadings and mailed them to the Immigration and Naturalization Service, although he admitted that there was some question whether the pleadings were received and processed by the INS. Because the clients “did not get what they paid for,” respondent agreed to return the fee the Saucedos paid. In the Samuels matter, respondent essentially admitted the misconduct charged in the formal charges. He also stated that he had agreed to return to Ms. Samuels her file and the fee she paid. Finally, respondent denied that he intentionally failed to cooperate with the ODC in its investigation of the complaints filed against him.

Hearing Committee Recommendation

Shortly before the hearing scheduled in this matter, respondent and the ODC entered into a stipulation in which respondent acknowledged that the factual allegations set forth in the formal charges are true, with the exception of Count I pertaining to the Randolph matter. With respect to that count, respondent agreed that he failed to deposit disputed fees into a client trust account, in violation of Rules 1.5 and 1.15 (safekeeping property of clients or third persons) of the Rules of Professional Conduct. The hearing committee accepted the stipulation of the parties, then permitted respondent to testify in mitigation.
Respondent explained that his disciplinary problems began in 1996 when his solo practice collapsed. In the spring of that year, the attorneys with whom respondent had shared office space and a support staff moved to another location. Respondent’s wife, who had worked as his secretary, went to work with them. Respondent testified that he worked “very, very inefficiently” on his own, because he no longer had a staff to do the typing, the filing, and record keeping. As a result, | Krespondent’s income suffered. His marriage ended in divorce shortly thereafter, and he became depressed. After closing his law practice, respondent taught school and cut grass to earn a living. At the time of the hearing, respondent was receiving unemployment compensation and was looking for work. Respondent further explained that he wanted to make restitution to his clients and had set aside some money to do so, but that he does not yet have the full amount Mr. Randolph, Mrs. Sauce-do, and Ms. Samuels are due.
Based on the evidence presented at the hearing, as well as the stipulation of the parties, the hearing committee concluded that respondent violated the professional rules as charged.[2] In particular, the com *775 mittee found that respondent exhibited a pattern of neglecting his clients’ legal matters and failing to communicate with his clients. The committee also found that respondent failed to properly and timely cooperate with the ODC in its investigation of the complaints filed against him.
Turning to the issue of an appropriate sanction, the committee suggested that the baseline sanction for respondent’s misconduct ranges from suspension to disbarment. As mitigating factors, the committee found respondent had personal and emotional problems at the time of the misconduct and displayed remorse for his actions. As aggravating factors, the committee recognized respondent’s prior disciplinary offenses, a pattern of misconduct, and substantial experience in the practice of law (admitted 1978). Considering all the evidence, the committee recommended that respondent be suspended from practice for three years.
^Neither respondent nor the ODC objected to the hearing committee’s recommendation.

Disciplinary Board Recommendation

The board found that respondent violated duties owed to his clients and to the profession, and that his conduct was knowing rather than intentional. The board suggested that the potential for serious injury is always present whenever an attorney neglects a legal matter, fails to safeguard client property, and fails to eom-municate fully with a client. In the instant matter, respondent’s clients experienced significant delays in the resolution of their legal matters, have been deprived of their money for an extended period of time, and were forced to obtain new legal counsel to resolve their cases. Moreover, the legal profession was harmed by respondent’s initial failure to cooperate in the disciplinary investigation of the complaints filed against him.
Considering the ABA’s Standards for Imposing Lawyer Sanctions[3] and the prior jurisprudence,[4] the board found the baseline sanction for respondent’s misconduct is a suspension from the practice of law. Given his prior disciplinary record, the board suggested that a lengthy suspension is appropriate. However, the board recognized that respondent’s current and prior misconduct arose at the same time as his divorce and the breakdown of his “support-system” for his solo practice. |7Concluding that neither respondent nor the public would be well served by a flat three-year suspension, the board recommended that respondent be suspended from the practice of law for three years, with one year deferred, followed by one year of supervised probation with conditions, including his attendance at Ethics School. The board further recommended that respondent be required to pay restitution to his clients and be assessed with all costs and expenses of *776 these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
Neither respondent nor the ODC objected to the disciplinary board’s recommendation.
DISCUSSION
The record supports a finding that respondent neglected his clients’ legal matters, failed to communicate with his clients, failed to account for or refund unearned fees, and failed to cooperate with the ODC in its investigation.[5] Therefore, the sole issue presented for our consideration is the appropriate sanction for this misconduct.
In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered |sm light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s conduct harmed his clients by delaying resolution of their legal matters and depriving them of their funds. Under similar facts, this court has imposed lengthy suspensions. See, e.g., In re: Powers, 99-2069 (La.9/24/99), 744 So.2d 1275 (three-year suspension imposed on attorney with a prior disciplinary record for similar misconduct who neglected three clients’ legal matters, failed to communicate with the clients, failed to account for and return unearned fees, and failed to cooperate with the ODC). Aggravating factors are present, such as a pattern of misconduct, respondent’s substantial experience in the practice of law, and his prior disciplinary record.[6] However, we also recognize the presence of mitigating factors, including respondent’s personal and emotional problems at the time of the misconduct, his remorse for his actions, and his belated cooperation with the ODC, as demonstrated by his stipulation acknowledging most of the charges against him.
Accordingly, we will adopt the disciplinary board’s recommendation and suspend respondent from the practice of law for three years, with one year deferred, followed by a one-year period of supervised probation subject to the conditions set forth by the disciplinary board.
DECREE
Upon review of the findings and recommendation of the hearing committee and *777 disciplinary board, and considering the record, it is ordered that Barry G. Feazel be suspended from the practice of law in Louisiana for a period of three years, with one | gyear deferred, followed by a one-year period of supervised probation subject to the conditions set forth by the disciplinary board. Respondent is ordered to make restitution of any unearned portion of the fees paid by his clients. Payment of restitution or good faith efforts at restitution may be considered in the event respondent seeks reinstatement to the practice of law. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
TRAYLOR, J., dissents and would not defer any of the suspension.

 Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.

. In Feazel I, respondent was retained to handle his client’s divorce. Respondent represented to his client that he had filed the divorce, but in fact, he had not. He then failed to return the unearned legal fee for more than a year.

. Notably, the hearing committee did not find that respondent engaged in the unauthorized practice of law. The committee found that while respondent accepted the Saucedo representation after he was suspended by this court, "the evidence indicates that the notice was not mailed to Mr. Feazel by the Supreme Court until November 12, 1998.” The committee is mistaken, however. Respondent was suspended on October 9, 1998, and the judgment became final fourteen days later. The notice mailed by this court on November 12, 1998 was simply the dissemination of the court’s ruling to all courts in this state, as required by Supreme Court Rule XIX, § 17(C).

. Standard 4.42 suggests that suspension is generally appropriate when a lawyer knowingly fails to perform services for a client or engages in a pattern of neglect and causes injury or potential injury to a client. Under Standard 4.41, disbarment is appropriate for such misconduct when the injury or potential injury is serious. Standard 7.2 suggests that suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system. Under Standard 7.1, disbarment is appropriate for such misconduct when the lawyer intends to obtain a benefit for himself. The board found the facts of this case do not support application of the disbarment standards.

. In In re Bivins, 98-2513 (La.12/11/98), 724 So.2d 198, this court suspended the attorney for one year and one day, followed by an eighteen-month period of probation, based on misconduct similar to that at issue in the instant case.

. Concerning the unauthorized practice of law issue, the record does not reflect when respondent received notice of his suspension in Feazel I. However, we assume it would have been shortly after the opinion was rendered on October 9, 1998. Respondent did not apply for a rehearing from the court’s ruling, and accordingly, the judgment became final on October 23, 1998. Three days later, respondent accepted a $900 check from Mrs. Saucedo. He subsequently discontinued any activities which constituted the practice of law. Thus, it appears that respondent did not knowingly violate the prohibition against practicing law after he was suspended and that any violation of Rule 5.5 of the Rules of Professional Conduct was strictly technical in nature.

. We decline to consider Feazel I as prior discipline, because most of respondent's misconduct in this case occurred prior to the rendition of that opinion. Nonetheless, we recognize, as we did in Feazel I, that respondent was reprimanded in 1986 for charging an excessive fee and in 1987 for commingling funds.